# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> MICHAEL BASTIANELLI, ) <br> ) <br> Defendant. ) <br> ) | Criminal No. 17-305 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

I.  INTRODUCTION

Following an arraignment and detention hearing on November 24, 2017, Magistrate Judge Lisa Pupo Lenihan denied the Government's request that Defendant Michael Bastianelli be detained pending trial and entered an Order setting his conditions of release. (Docket No. 27, 37). On November 29, 2017, the Government appealed said Order to this Court, seeking a *de novo* review and hearing under § 3145 of the Bail Reform Act, 18 U.S.C. § 3141 et seq. (Docket No. 36). The Government filed its brief in support of its appeal on January 5, 2018 and it subsequently filed the police reports and search warrant documents referenced therein and during the hearing on January 10, 2018. (Docket Nos. 45, 51). Defendant responded in opposition on January 29, 2018. (Docket No. 56). The Court has undertaken a *de novo* review of the transcript from the detention hearing and the evidence presented at that time, as well as the parties' arguments and the evidence of record. Because the record was fully developed before Magistrate Judge Lenihan and the Court has considered all of the additional materials that have been added to the record at this stage, the Court finds that a hearing on this matter is unnecessary and denies the Government's request for same. *United States v. Oliver,* 2016 WL 1746853, *1, 3 (W.D. Pa. 2016). Nevertheless, for the

following reasons, the Court hereby vacates the Order Setting Defendant's Conditions of Release (Docket No. 27) and orders that he be detained pending trial.

II. BACKGROUND

On November 2, 2017, Defendant and his codefendant, John Fullum, were charged by way of a sealed indictment with (1) one count of conspiracy to possess with intent to distribute and distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 846 for conduct occurring between January 1, 2017 and March 22, 2017, and (2) one count of possession with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) for conduct occurring on March 21, 2017. (Docket No. 1). The potential penalties for such violations include a sentence of not less than ten years' imprisonment and up to a term of life imprisonment. 21 U.S.C. §§ 841(b)(1)(A)(viii), 846. Further, in light of Defendant's prior felony drug convictions, and as explained below, if the Government files an information under § 851 he would be subject to a sentence of not less than twenty years' imprisonment and possibly a mandatory minimum term of life imprisonment. *Id.*; 21 U.S.C. § 851.

By way of background, on March 21, 2017, six detectives from the City of Pittsburgh arrested Defendant and Fullum in the DoubleTree Hotel in downtown Pittsburgh after the front desk reported that it suspected Fullum was selling methamphetamine from his rented room. (Docket No. 51). According to the police report and search warrant documents, the detectives were familiar with both Defendant and Fullum because they previously arrested them in 2014 for possession of methamphetamine with intent to deliver. (*Id.*). After obtaining a search warrant for the hotel room, Detectives allegedly recovered "a gallon size vacuum seal bag containing a large quantity of crystal methamphetamine," as well as smaller bags and containers of same, a bag with

a large quantity of MDMA, other drug paraphernalia, a torch lighter, and $8,450 cash.[1] (*Id.*). In all, the Government asserted at the hearing that detectives recovered more than 400 grams of methamphetamine from the hotel room. (Docket No. 37 at 24). A second search warrant was executed the next day at the shared residence of Defendant and Fullum in the Lawrenceville neighborhood of Pennsylvania, at which time detectives allegedly recovered additional methamphetamine and other contraband. (Docket Nos. 37 at 8; 45 at 4; 51). Defendant and Fullum were originally charged in state court but the Government subsequently adopted the charges, resulting in the state court charges eventually being withdrawn. (Docket No. 56 at ¶ 2). They had their initial appearance on November 21, 2017 and their arraignment and detention hearing was set for November 24, 2017. (Docket Nos. 11, 18).

Although the Government reached an agreement to release Fullum on an unsecured appearance bond, (Docket Nos. 33, 34, 37 at 9-11), it requested that Defendant be detained pending trial. (Docket No. 37 at 4). Unlike Fullum, Defendant was still on probation from the prior felony conviction for possession with intent to deliver a controlled substance referenced in the police documents (Allegheny County Court of Common Pleas, CP-02-CR-4702-2014), and a probation detainer was lodged against him. (Bond Report dated 11/22/17). According to the U.S. probation officer in attendance at the hearing, Defendant's county probation officer recently informed her that he did "not plan to lift the detainer at this time" due to technical violations for "not doing well at drug and alcohol treatment and also not providing a correct address." (Docket No. 37 at 6-7).

---

[1] Detectives also allegedly recovered two bottles of 1,4-butanediol. (Docket No. 51). In the Government's brief, it asserts that 1,4-butanediol "is a GHB, the date rape drug, analogue and has the same effects when consumed by humans." (Docket No. 45 at 3-4). In response, Defendant cites a DEA Fact Sheet for the proposition that people ingest it for other reasons, including bodybuilding, fat loss, reversal of baldness, improved eyesight, anti-aging, depression, drug addiction, and insomnia. (Docket No. 56 at 8 n. 2). For purposes of resolving the instant appeal, the Court need not address the parties' disagreement here or hold a hearing on this issue in light of all of the other evidence in the record which, as explained below, favors detention.

Magistrate Judge Lenihan remarked "that some of [her] colleagues won't have hearings if there are state court detainers." (Docket No. 37 at 7). *See United States v. Gay*, 2016 WL 4036727, *4 (W.D. Pa. 2016) (Fischer, J.) ("[C]ourts have rejected the argument that bond is appropriate for a defendant subject to a state detainer because he will merely be transferred from federal to state custody."). Nevertheless, given Defendant's request for a hearing, Magistrate Judge Lenihan agreed to hold same. (Docket No. 37 at 7).

Based on the charges against Defendant in this case, it was undisputed at the hearing that there is a presumption of pretrial detention in this case under 18 U.S.C. § 3142(e). (*Id.* at 12). As such, Defendant proceeded by proffer in an attempt to rebut said presumption. (*Id.*). Through his counsel, Defendant proffered that he had appeared for every scheduled state court proceeding, he completed inpatient substance abuse treatment at Cove Forge, he was actively participating in outpatient substance abuse treatment, and he was maintaining contact with his probation officer. (*Id.* at 12-16); *see also* (Docket No. 56-1) (letter from Defendant's state court lawyer, Robert E. Mielnicki, Esquire, stating: "I am going off memory here. Michael satisfactorily completed the program at Cove Forge and was released."). In addition, Defendant proffered testimony from Jason Bolton, a member of his "chosen family," that he continues to participate in outpatient treatment and do "handyman-type work" in his own home and Bolton's. (*Id.* at 16-17, citing *Bond Report dated 11/22/17*). Defendant also proffered that he has a serious medical condition for which he was receiving medical treatment. (*Id.* at 17-20). He sought to be released to live at the residence of Charlie Beamer, which is the same residence to which his codefendant, Fullum was released that same day. (*Id.* at 20-21).

In response, the Government did not call any witnesses and instead argued that Defendant failed to rebut the applicable presumption against pretrial detention. (*Id.* at 22-25).

4

Notwithstanding Defendant's perfect attendance for his state court proceedings, the Government asserted that he has a "huge incentive" to flee based on the significant penalties he faces in this case. (*Id.* at 22). In addition to his 2015 felony drug conviction in Allegheny County described above (CP-02-CR-4702-2014), Defendant was convicted of felony possession with intent to deliver a controlled substance in Michigan in 2007. (*Id.*, citing *Bond Report dated 11/22/17*). Although the Bond Report prepared by Pretrial Services does not specify the type or quantity of controlled substances with respect to these prior convictions, Defendant did not object to the Government's statement that the 2007 conviction was for trafficking MDMA and the 2015 conviction involved trafficking the same drugs for which he is charged herein, *i.e.,* methamphetamine. (*Id.*). The Government continued that if Defendant is convicted of the charges in this case, and if it files an information under § 851 establishing one or both of his prior felony drug convictions, then he is subject to a mandatory minimum term of imprisonment of 20 years or a term of life imprisonment, respectively. (*Id.*). The Government also maintained that Defendant failed to rebut the applicable presumption by presenting some evidence that he does not pose a danger to the community, if released. (*Id.* at 23-24). In this regard, the Government reiterated that he has two prior felony drug convictions, he was serving a term of probation for the prior methamphetamine conviction during the alleged conduct in this case, and a federal grand jury returned a two-count indictment for conspiracy and possession with intent to distribute 50 grams of more of methamphetamine. (*Id.* at 24).

As noted, both Defendant and the Government relied on the Bond Report prepared by Pretrial Services and neither side objected to any statements therein. (*Id.* at 13, 16, 20, 25). Magistrate Judge Lenihan and the parties also had the benefit of the police reports and search warrant documents. (*Id.* at 23-24). Although Defendant initially objected to the Government

5

admitting these documents into evidence, Magistrate Judge Lenihan stated she already read them, was aware of the alleged circumstances underlying the charges, and would be considering same. (*Id.*).[2]

After considering the parties' respective positions, Magistrate Judge Lenihan denied the Government's request for pretrial detention. (*Id.* at 27-33). She found that the nature and circumstances of the alleged offenses involve "a conspiracy that lasted at least for three or four months and a situation where certainly the use and distribution of methamphetamine is dangerous to the community," and that the weight of the evidence against Defendant is strong. (*Id.* at 29). When considering Defendant's personal history and characteristics, she noted that Defendant has support from Bolton, his "chosen family," and that his prior criminal convictions are also serious. (*Id.*). Nonetheless, she found Defendant's proffer that he is no longer using methamphetamine to be dispositive to the inquiry of whether he poses a danger to the community:

> However, it seems to me that that was because you were using and testimony has been presented that you have not been using for some time; that following your arrest, you did get inpatient treatment at Cove Forge, that after getting out of Cove Forge, you have not been arrested or charged with any violations that I am aware of and that you are continuing your outpatient treatment.
>
> I think that as long as you do not use, you are not a danger to the community. I think that if you do use, you are a danger to the community. This is why I'm asking about this medication.[3]

---

[2] Defendant points out in his response to the Government's appeal that he made this objection, but he does not present any argument or cite any authority for why he believes these documents should not have been considered at the detention hearing and he argues that a *de novo* hearing on the Government's appeal is not necessary. (Docket No. 56 at ¶ 6, p. 7).

[3] Defendant takes medication for his ADHD, which he proffered made him test positive for methamphetamine. (Docket No. 37 at 26-27). He agreed that, if released, he would take an alternate medication which did not contain methamphetamine. (*Id.*).

(*Id.* at 30). Thus, Magistrate Judge Lenihan released Defendant on a $25,000 appearance bond and set numerous conditions of release, including that he be placed on home detention with electronic monitoring, not discuss the case with his roommate and codefendant Fullum, receive a mental health evaluation, participate in substance abuse treatment, and comply with drug tests. (Docket Nos. 26, 27, 37 at 30-33). In any event, in light of the probation detainer, Defendant was remanded to state custody, where he remains today. (Docket Nos. 37 at 33, 56 at 11).

The Government filed an appeal for a *de novo* review and hearing on November 29, 2017 but never filed a motion or supporting brief with legal argument. (Docket No. 36).[4] As such, the Court set a briefing schedule relative to the appeal on December 21, 2017. (Docket No. 42). In accordance with same, the Government filed its brief in support of its appeal on January 5, 2018, (Docket No. 45), and Defendant filed its response in opposition on January 29, 2018 after being granted multiple extensions. (Docket No. 56). No further briefing has been submitted. Accordingly, the matter is now ripe for disposition.

III. LEGAL STANDARD

A District Judge reviews the decision of the U.S. Magistrate Judge granting or denying bail *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record. *See e.g.,* 18 U.S.C. § 3142(f)(2)(B); *United States v. Burgess*, Crim. No. 09-150, 2009 WL 2038148, at *2 (W.D. Pa. Jul. 9, 2009). However, when the record is fully developed below, and the parties have not proffered any additional evidence which would materially alter the decision of the Magistrate Judge, as is the case here, the Court will rule on the record established before the

---

[4] The hearing transcript was filed on December 1, 2017. (Docket No. 37).

7

Magistrate Judge. *See e.g., United States v. Ewell*, 2013 WL 4479029, at *1 (W.D. Pa. 2013); *United States v. Atkins*, 2015 WL 4920831, at *3 (W.D. Pa. 2015).

IV. DISCUSSION

The parties do not dispute Magistrate Judge Lenihan's finding that a rebuttable presumption of detention arises in this case given the grand jury's return of an Indictment charging Defendant with violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum possible sentence is life imprisonment and, hence, exceeds a term of incarceration of more than 10 years. (Docket Nos. 37, 45, 56). The grand jury's return of the Indictment suffices to demonstrate probable cause that these offenses were committed. S*ee United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986). As explained, the potential penalties for the violations charged in the indictment include a statutory minimum sentence of 10 years and up to a term of life imprisonment, and if his prior felony drug convictions are established, he faces a minimum term of imprisonment of 20 years and possibly a mandatory sentence of life imprisonment. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846, 851. Therefore, a rebuttable presumption has been established that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and reasonably assure the safety of the community from the commission of further crimes by this Defendant. *See* 18 U.S.C. § 3142(e)(3).

The parties dispute the ultimate finding of release by Magistrate Judge Lenihan and her evaluation of the evidence presented at the detention hearing. (Docket Nos. 36, 37, 45, 56). The relevant legal principles on these contested issues follow.

When the presumption of detention arises, the burden shifts to Defendant to produce some credible evidence that he will appear and will not present a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). If Defendant makes such a showing, the burden

then returns to the Government to demonstrate by clear and convincing evidence that Defendant is a danger to the community and/or by a preponderance of the evidence that Defendant is a flight risk. *See United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness."). In making its determination of whether there are conditions of release that will reasonably assure the appearance of Defendant as required and the safety of any other person and the community, the Court must weigh the evidence in light of the factors set forth in 18 U.S.C. § 3142(g), i.e.:

> (1) the nature and circumstances of the offense charged […];
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Section 3142(e) provides that if a "judicial officer finds that no condition or combination of conditions [of pretrial release] will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

After careful consideration of all the evidence of record, and the arguments of counsel in light of these governing legal principles, the Court finds that, on balance, the evidence presented at the detention hearing before Magistrate Judge Lenihan overwhelmingly favors the Government on each of these factors and that Defendant failed to rebut the presumption against detention. In addition, even if Defendant had rebutted said presumption, this Court finds after considering the record as a whole there is no condition or set of conditions which would reasonably assure that Defendant would not engage in drug trafficking on release. Accordingly, the Court vacates the decision of Magistrate Judge Lenihan ordering that Defendant be released pending trial and orders that he be detained. The Court now turns to its evaluation of the evidence on these legal points.

*A. Nature and Circumstances of Offenses Charged and Weight of Evidence*

Given the facts of this case, the Court finds it appropriate to analyze the first two factors together. *See Oliver,* 2016 WL 1746853, at *6. During the detention hearing, Magistrate Judge Lenihan described the nature and circumstances of the alleged offenses as involving "a conspiracy that lasted at least for three or four months and a situation where certainly the use and distribution of methamphetamine is dangerous to the community," and that the weight of the evidence against Defendant is strong. (Docket No. 37 at 29). While the Court recognizes that Defendant is presumed innocent of these charges, *see* 18 U.S.C. 3142(j), the Court agrees with the Magistrate Judge Lenihan's assessment of these factors.

Initially, Defendant is charged at Counts 1 and 2 with conspiracy and possession with intent to distribute 50 grams or more of methamphetamine, which, in and of itself, is very serious, as reflected by the severe mandatory penalties that these charges carry. *See United States v. Bey*, 2015 WL 7176340, *2 (W.D. Pa. 2015); *United States v. Kolasinac*, 497 F. App'x 216, 218 (3d Cir. 2012) ("methamphetamines are extremely dangerous to the public."). But, according to the

Government, Defendant was actually in possession of more than 400 grams of methamphetamine in the hotel room on March 21, 2017, which far exceeds the 50 gram threshold for which he is charged, and he was also in possession of other contraband and more than $8000 cash. (Docket Nos. 37 at 24; 45 at 1; 51); *Oliver*, 2016 WL 1746853, at *6. Beyond his alleged possession of the methamphetamine in the hotel room, the Government points out that after he was taken into custody, a second search warrant was executed at his shared residence the next day, which allegedly uncovered more evidence of methamphetamine and other contraband. (Docket Nos. 37 at 8; 45 at 4).

Notably, Defendant did not dispute at the hearing, nor does he claim now, that the nature and circumstances of the offenses charged are very serious or that the weight of the evidence against him is strong. (*See* Docket Nos. 37, 56). Rather, he contends that these factors cannot justify his detention because they were not "enough for the government to even seek detention of Mr. Fullum." (Docket No. 56 at 10-11). This argument, however, ignores that "the pretrial release of a codefendant has no bearing on whether or not a defendant should be released or detained and is not a factor the Court should properly consider under the Bail Reform Act." *United States v. Aponte*, 2018 WL 646143, *3 (W.D. Pa. 2018). To the contrary, this Court is required to make an individualized assessment of Defendant's eligibility for pretrial detention, irrespective of whether the Government sought detention of Fullum, which the Court has done. *Oliver,* 2016 WL 1746853, at *10.

With that said, Defendant's prior criminal history and his alleged conduct during the arrest appear to belie his complaints of disparate treatment as compared to Fullum. Fullum was <u>not</u> on probation at the time of the alleged conduct in this case and the felony drug charges filed against him in 2014 were withdrawn when he pleaded guilty to the misdemeanor charges in 2015, resulting

in a sentence of one year of probation.  (*See* Allegheny County Court of Common Pleas, CP-02-CR-4710-2014).[5]  The Court has not been advised that Fullum has any other prior convictions, felony or otherwise.  In contrast, Defendant has two prior felony drug convictions and was on probation at the time of alleged conduct in this case.  (*Bond Report dated 11/22/17*).  Moreover, the police report and search warrant documents state that Fullum was immediately compliant when he was arrested by detectives on March 21, 2017.  (Docket No. 51). Defendant, on the other hand, allegedly slammed the door on a detective when they attempted to enter the hotel room and was initially charged with resisting arrest.  (*See id.*; *Bond Report dated 11/22/17*); *see also Delker*, 757 F.2d at 1400 (considering the defendant's arrest history in detention decision); *United States v. Thomas*, 2016 WL 890583, *9 (W.D. Pa. 2016) (same).  Thus, Defendant's complaints of disparate treatment are both legally and factually erroneous.

In sum, there is significant evidence that Defendant was involved in the offenses charged at Counts 1 and 2 and the weight of the evidence appears strong, favoring pretrial detention.  18 U.S.C. § 3142(g)(1)-(2).

    *B.  History and Characteristics of Defendant*

The Court next considers Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" under section 3142(g)(3)(A).

Defendant is 31 years old.  (*See Bond Report dated 11/22/17).*  He was born in Flint, Michigan and moved to Pittsburgh in 2007, where he has resided since, except for a six-month period in 2011 when he lived in Columbus, Ohio.  (*Id.*).  Defendant's parents reside in Michigan

---

[5] https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-02-CR-0004710-2014.

and he does not maintain contact with them. (*Id.*). His sisters reside in Michigan and Florida and he has contact with them only once per year. (*Id.*). He is unmarried, has no children, and has been in a relationship with Fullum since approximately 2013. (*Id.*). He also considers Jason Bolton his "chosen family," and he proffers that they "share a very close relationship and they've known each other for at least 10 years." (*Id.*); *see also* (Docket No. 37 at 17).

Defendant's employment history is scarce. From 2007 to 2008, he worked at Big Apple Bagel in Michigan, and he reports no other employment until 2015, at which time he was "self-employed (selling goods on EBay and Amazon)" until his arrest in March 2017. (*Bond Report dated 11/22/17*). Defendant has remained unemployed since that date. (*Id.*). His estimated net worth is approximately $2,700 and he has no monthly income, although he also reports having no monthly bills. (*Id.*). Despite his unemployment, he proffers that he has stayed busy by doing "handyman-type work," including helping to install an island in Bolton's kitchen and work around his own residence. (Docket No. 37 at 17).

Defendant reports taking medication to treat his numerous serious physical health conditions, as well as medication for his ADHD, and he receives counseling for PTSD. (*Bond Report dated 11/22/17*). As to substance abuse history, Defendant reported that from 2006 until his March 2017 arrest, he was using methamphetamines on a daily basis. (*Id.*). He completed a 30-day inpatient substance abuse treatment program at Cove Forge from July to August 2017 and was continuing outpatient treatment at the time of the issuance of the Bond Report. (*Id.*).

As noted, Defendant's prior criminal history is serious and involves a 2007 conviction in Michigan for felony possession with intent to deliver a controlled substance, for which he was sentenced to 182 days' confinement and 1827 days' probation, and a 2015 conviction in Allegheny County for felony possession with intent to deliver a controlled substance, for which he was

13

sentenced to three years' probation. (*Id.*). It is uncontested that the 2007 conviction involved trafficking MDMA and the 2015 conviction involved trafficking methamphetamine and that he was on probation for the latter conviction at the time of the alleged conduct herein. (Docket No. 37 at 22).

Defendant proffers that he can be released to live at Charlie Beamer's residence together with his codefendant Fullum. (*Id.* at 20). It is well established that the mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case. *See United States v. Bratcher*, 2014 WL 1371582 (W.D. Pa. 2014) (Conti, C.J.). Here, the Court has concerns about returning Defendant to live with his codefendant, Fullum. This Court generally orders as a condition of a defendant's pretrial release that he "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution." (*See, e.g.,* Docket No. 27 at ¶ 7(g)). Magistrate Judge Lenihan modified this standard condition by writing: "with the exception of John Fullum, but Defendant is not to discuss this case with Mr. Fullum." (*Id.*). Although the Court agrees that they should be precluded from discussing the case, the Court is highly skeptical that they would ever follow such a condition as roommates. The Court's main concern with them living together, however, derives from the fact that in addition to their alleged conduct in this case, they were both previously charged in 2014 with several felonies, including possession of methamphetamine with intent to deliver, resulting in Defendant pleading guilty to a felony drug charge and Fullum pleading guilty to several misdemeanor charges. (Docket No. 51; *Bond Report dated 11/22/17*; CP-02-CR-4710-2014).

Further, although the Court appreciates that at the time of the detention hearing Defendant was making serious efforts to maintain his sobriety through his participation in both inpatient and outpatient substance abuse treatment, (Docket No. 56 at 9-10), the Court rejects the notion that he is only a danger to the community if he is personally using methamphetamine, as he maintains and as Magistrate Judge Lenihan concluded. (Docket No. 37 at 29; 56 at 10). Even if Defendant is no longer using methamphetamine, he remains a danger to the community, in this Court's estimation, given that the quantity of controlled substances allegedly attributable to him in this case – 50 grams or more of methamphetamine – far exceeds the amount that could be used for his personal consumption. *Cf. United States v. McNeal*, 960 F.Supp. 245, 247 (D. Kan. 1997) (finding that the defendant posed a danger to the community under § 3148 notwithstanding her contention that she was no longer addicted to crack cocaine). "An individual's personal drug use is a separate issue from the individual's activities importing and distributing drugs which gives rise to the presumption." *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990). In other words, the Court must balance Defendant's alleged current sobriety with all of his other history and characteristics.

To this end, his proffers that he is not a danger to the community because he was staying busy by doing "handyman-type work" and has the support of his "chosen family" is undermined by his limited employment history, the fact that he was unemployed at the time of the detention hearing, and his multiple prior felony drug convictions. *See Suppa*, 1986 F.2d at 120 ("[I]t is significant that there was no evidence of steady employment."); *United Sates v. Dumont*, 634 F.Supp. 407, 407 (W.D. Pa. 1986) ("Facing the lack of legitimate income, [the defendant's] temptation to continue to engage in narcotics dealing will be strong."); *Atkins*, 2015 WL 4920831 at *8 ("Notably, Defendant has significant gaps in lawful employment, outside of the time during

15

which he was incarcerated."). It is particularly concerning to the Court that the alleged conduct in this case occurred when he was serving a sentence of probation for a prior felony drug conviction for trafficking the same controlled substance at issue in this case. *See United States v. Schatzman*, 2014 WL 3565997, at *4 (W.D. Pa. 2014) ("[I]t cannot be overlooked that defendant had a significant criminal history and was on state probation and pretrial release during the time he is alleged to have committed the instant federal offenses."); *Bratcher*, 2014 WL 1371582, at *8 ("There is evidence that while on bond or probation for prior offenses, defendant committed other criminal offenses, and there are outstanding warrants for his arrest. This evidence weighs in favor of defendant's detention pending trial."). Likewise, Defendant's argument that he has not missed any state court hearings or proceedings after his March 2017 arrest carries little, if any, weight since he is *still* being held on a county probation detainer which was lodged against him in November 2017 for alleged technical violations, including "not providing a correct address" to his assigned supervisor, as reported by the U.S. probation officer in attendance at the detention hearing. (Docket No. 37 at 6-7). In light of Defendant's alleged failure to comply with the terms of his county probation, his prior felony drug convictions, and lack of legitimate employment history, there is no basis to accept his contention that being subject to "double the supervision" would somehow change his behavior going forward. (Docket No. 56 at 10).

The Court finds that when considering *all* of Defendant's history and characteristics, this factor weighs strongly in favor of detention and that Defendant's proffered evidence is insufficient to rebut the presumption under § 3142(e). *See Atkins*, 2015 WL 4920831, at *6-7.

### C. Nature and Seriousness of Danger to Any Person or the Community if Released

The fourth and final factor involves consideration of the defendant's risk of non-appearance and the seriousness of potential harm to any persons or the community. 18 U.S.C. §

3142(g). Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs methamphetamine. *See United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("violence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs."); *United States v. Thing Hung Le*, 661 F. App'x 162, 167 (3d Cir. 2016), cert. denied sub nom. *Thinh Hung Le v. United States*, 137 S. Ct. 705, 196 L. Ed. 2d 578 (2017) ("methamphetamine, a very dangerous drug on its own"); *Kolasinac*, 497 F. App'x at 218 ("methamphetamines are extremely dangerous to the public."). As this Court has previously recognized, distribution of Schedule II controlled substances like methamphetamine have a "high potential for abuse," have "a currently accepted medical use in treatment in the United States" with "severe restrictions," but "abuse of the drug or other substances may lead to severe psychological or physical dependence." 21 U.S.C. § 812(b)(2). The amount of methamphetamine that was allegedly trafficked here – that is, <u>more than 400 grams of methamphetamine</u> – far exceeds 50 grams, which triggers a 10 year mandatory minimum sentence of imprisonment under 18 U.S.C. § 841(b)(1)(A)(viii), and at least double that sentence if the Government establishes one or both of his prior felony drug convictions under § 851, as set forth above. Hence, the high volume trafficking of this particular illegal narcotic presents considerable danger to the community.

Ultimately, "the court must *predict* whether defendant will engage in criminal activity if released pending trial." *Bratcher*, 2014 WL 1371582, at *8 (citing *United States v. Perry*, 788 F.2d 100, 114 (3d Cir. 1986)) (emphasis in original). Many courts, including this one, have recognized that strict conditions of release, including home confinement and electronic monitoring cannot guarantee that a defendant will no longer engage in criminal activity. *See e.g., United States v. Yarbough*, 2014 WL 7343839, *4 (W.D. Pa. 2014) ("If released to home detention,

nothing prevents Defendant from continuing to engage in illegal activity."); *Atkins*, 2015 WL 4920831 at *7. Based on the serious nature of the charges herein, which allegedly occurred when he was serving a sentence of probation for a felony drug conviction, as well as all of the other § 3142(g) factors considered above, the Court finds that the weight of the evidence is such that the release of Defendant on bond is inappropriate and that his release, on even the most severe restrictions, would pose a serious risk of his continued drug trafficking activities. *Atkins*, 2015 WL 4920831, at *9 (citing 18 U.S.C. § 3142(g)).[6]

  *D. Overall Weighing of Relevant Factors*

In light of the above findings, the Court concludes that Defendant has not met his burden to rebut the applicable presumption of detention under § 3142(e) by presenting some credible evidence that he will not pose a threat to any persons or the community. *See Carbone*, 793 F.2d at 560. Even if Defendant had rebutted said presumption, it nevertheless retains evidentiary weight. *Id.* at 560-61; *see also United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir. 1986) ("[T]he rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relevant to factors listed in section 3142(g)."). When considering same together with the Bond Report, the indictment, and police reports and search warrant documents, the Court alternatively finds that the Government established by clear and convincing evidence that Defendant is a danger to the community. *See Perry*, 788 F.2d at 115. Accordingly, pretrial detention is appropriately ordered based on this record.

---

[6] This remains true even if Defendant has rebutted the presumption that he is not a risk of flight and the government has failed to establish same by a preponderance of evidence. *Bratcher*, 2014 WL 1371582, at *9.

V. CONCLUSION

For the foregoing reasons, the Order Setting Defendant's Conditions of Release issued by Magistrate Judge Lenihan on November 24, 2017 [27] is VACATED, and Defendant is ordered detained pending trial. An appropriate Order follows.

>     /s/ Nora Barry Fischer
>     Nora Barry Fischer
>     United States District Judge

Date: February 22, 2018.

cc/ecf: All counsel of record.

Michael Bastianelli c/o Linda Cohn, AFPD

U.S. Probation Office