IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.           )<br>)<br>MICHAEL BASTIANELLI,      )<br>)<br>Defendant.     ) | Criminal No. 17-305<br>Judge Nora Barry Fischer |

**MEMORANDUM AND ORDER OF COURT**

Presently before the Court is a Motion for Release Pending Sentencing (Docket No. 249) filed by Defendant Michael Bastianelli ("Defendant"), seeking release on bond pending his upcoming sentencing hearing which is presently scheduled for May 17, 2022. (Docket No. 277). Defendant's motion is opposed by the Government. (Docket No. 260). The motion has been fully briefed and the Court has been supplied with Defendant's detention records which have been filed under seal. (Docket Nos. 249, 255, 260, 264, 278, 279). After careful consideration of the parties' positions, and for the following reasons, Defendant's Motion [249] is denied.

**I.    BACKGROUND**

On November 2, 2017, a grand jury returned a two count indictment against Defendant and co-defendant John Fullum for dealing methamphetamines. (Docket No. 1). The charges were for (1) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine from around January 1, 2017 until March 22, 2017 and (2) possession with intent to distribute 50 grams or more of methamphetamine on or about March 21, 2017. (*Id.*). The indictment also included a forfeiture allegation for $8,000, seized on March 21, 2017. (*Id.*). Defendant was arraigned on November 17, 2017 before Magistrate Judge Lisa P. Lenihan. (Docket No. 22). Magistrate Judge Lenihan ordered Defendant released on a $25,000 unsecured bond. (Docket No. 25). The

1

Government appealed the bond order. (Docket No. 36). The Court, after review of briefing on the issue, vacated the bond order and ordered Defendant to be detained pending trial. (Docket Nos. 60, 61). Defendant then filed numerous requests for extension of time to file pre-trial motions, all of which were granted. In the meantime, after the onset of the pandemic, Defendant filed a motion for reconsideration of the Court's detention order, citing the dangers caused by COVID-19 to inmates like himself. (Docket No. 161). After careful consideration, the Court denied the motion for reconsideration. (Docket No. 164).

Several years after his indictment, on November 1, 2021, Defendant pled guilty to lesser-included offenses at both counts of the indictment. (Docket No. 226). Specifically, he pled guilty to one count of conspiracy to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), in violation of 21 U.S.C. § 846. (*Id.*). He also pled guilty to one count of possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii). (*Id.*). In their plea agreement, the parties stipulated that the type and quantity of drugs attributable to Defendant was between 350 and 500 grams of a mixture of methamphetamine. (Docket No. 225-1). The parties also agreed that the Government would recommend an application of the safety valve from 18 U.S.C. § 3553(f), if Defendant met certain conditions. (*Id.*).

On November 1, 2021, right after Defendant pled guilty, his counsel orally moved for his release pending sentencing. (Docket No. 225). The Court deferred its decision and ordered the parties to brief the issue. (*Id.*). As the case proceeded, the United States Probation Office submitted a Final Presentence Report ("PIR") on January 3, 2022. (Docket No. 240). The PIR revealed the following information about Defendant's criminal history:

- On December 3, 2007, Defendant pled guilty to "Delivery/Manufacture of a Controlled Substance-Methamphetamine/Ecstasy" in Michigan state court and received a 182-day jail sentence along with 5 years' probation. (*Id.* at ¶ 31). On March 4, 2010, Defendant obtained an early discharge of his probation term. (*Id.*). The PIR reveals that when law enforcement searched Defendant's person and vehicle during the execution of a search warrant they found methamphetamine, ecstasy, Ketamine, drug paraphernalia, and $820. (*Id.*).

- On January 10, 2012, defendant pled guilty to "Controlled Substance-Possession of Methamphetamine" in Michigan state court. (*Id.* at ¶ 32). According to the PIR, law enforcement pulled over a vehicle that was weaving from right to left on the road, making it appear that Defendant was driving under the influence. (*Id.*). Law enforcement stopped the vehicle and ordered Defendant to step out. (*Id.*). He failed to obey, so law enforcement removed him from the vehicle and placed him under arrest. (*Id.*). Law enforcement searched the vehicle and located plastic baggies containing "miscellaneous powder," methamphetamine, Adderall, and unidentified pills. (*Id.*). After pleading guilty, Defendant failed to appear for sentencing, so a bench warrant was issued for his arrest on April 4, 2012. (*Id.*).[1] The warrant remains active. (*Id.*).[2]

- On August 15, 2015, Defendant pled guilty to "Delivery/Possession with Intent to Deliver a Controlled Substance" in Pennsylvania state court. (*Id.* at ¶ 33). For this offense, law enforcement searched the residence of Defendant and John Fullum and

---

[1] During his interview with the Probation Office, Defendant indicated that he moved from Michigan to Pennsylvania in 2009. (Docket No. 240 at ¶ 44). He had apparently returned to Michigan for an unspecified period of time when he committed the offense for which he pled guilty in 2012.
[2] The Court discussed the warrant with the Probation Office, who indicated that while the warrant remained active, it did not believe, based on its research, that authorities in Michigan would seek to extradite Defendant to Michigan given the nature of the charge and the warrant's age.

located "methamphetamine, drug paraphernalia, cell phones, and U.S. currency." (*Id.*). He received a 3-year term of probation, which he was still serving when he committed the instant offenses. (*Id.* at ¶ 35).

For the present offenses, the PIR reveals that on March 21, 2017, a hotel manager in downtown Pittsburgh reported to law enforcement that suspicious activity was taking place in one of the hotel rooms. (*Id.* at ¶ 10). Law enforcement visited the hotel room, where they located Defendant and observed a glass pipe, a torch lighter, a gallon-sized vacuum-sealed bag containing what they perceived to be crystal methamphetamine, and $8,000. (*Id.* at ¶¶ 11, 12, 14). A lab report revealed that the bag contained 443 grams of methamphetamine. (*Id.* at ¶ 15). As noted, Defendant was serving a term of probation for his 2015 Pennsylvania conviction at the time of this arrest. (*Id.* at ¶ 35).

Based on his prior criminal history, the Probation Office has determined that Defendant is a career offender, subjecting him to an advisory guidelines range of 188 to 235 months. (*Id.* at ¶¶ 26, 73). Without the career offender enhancement, Defendant's offense level is 23 and criminal history category is III, making his otherwise applicable advisory guidelines range of 57 to 71 months' incarceration. (*Id.* at ¶¶ 25, 27, 28 36); U.S.S.G. Chapter 5, Part A. Since Defendant qualifies for the safety valve, he is not subject to a mandatory minimum sentence of 5 years' under 21 U.S.C. § 841(b)(1)(B). The Government submitted a Position with Respect to Sentencing Factors on February 8, 2022 and stated that it had no objections or modifications to the PIR, advocating that a "within-Guidelines sentence is appropriate in this case." (Docket No. 257). (*Id.*). Defendant has not submitted a position with respect to sentencing factors and has sought numerous continuances to file same. (Docket Nos. 242, 250, 258, 262, 266, 270, 276).

After several extensions of time, Defendant filed a Motion for Release from Custody along with supporting exhibits on January 24, 2022. (Docket No. 249). Defendant also filed a Supplement on February 2, 2022. (Docket No. 255). The Government submitted a Response in Opposition on

4

February 16, 2022. (Docket No. 260). Defendant countered with a Reply on March 2, 2022. (Docket No. 264). Lastly, the Government filed a Sur-reply and attached Defendant's jail records under seal on April 4, 2022. (Docket Nos. 278, 279). Accordingly, Defendant's motion is ripe for disposition.

## II. DISCUSSION

As an initial matter, the Court notes that it considered Defendant's previous motion for release before trial under a more lenient standard than that he now faces given his guilty plea. (Docket No. 60 at 8-9). After his indictment but before Defendant pled guilty, Defendant's release was governed by 18 U.S.C. § 3142. In short, the standard required him to "produce some credible evidence that he will appear and will not present a threat to the community." (Docket No. 60 at 8 (citing *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986))). If Defendant met his burden, the Government had to demonstrate by "clear and convincing evidence that Defendant is a danger to the community and/or by a preponderance of the evidence that Defendant is a flight risk." (*Id.* at 9 (citing *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986))). In Defendant's earlier motion, the Court found that (1) Defendant failed to produce some credible evidence that he will not present a danger to the community and, in the alternative, (2) the Government "established by clear and convincing evidence that Defendant is a danger to the community." (*Id.* at 10, 18).

Now that Defendant has pled guilty, 18 U.S.C. §§ 3143 and 3145 govern his motion for release. According to § 3143(a)(2), a "judicial officer shall order that a person who has been found guilty of an offense in a [21 U.S.C. § 801 *et seq.*] case . . . and is awaiting imposition or execution of sentence be detained." 18 U.S.C. § 3143(a)(2). To secure release, Defendant must establish several conditions. The Court must first "find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). Then, Defendant can secure release only "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). The Court

5

will first assess Defendant's motion under § 3145(c) to determine whether this Defendant has "clearly shown" "exceptional reasons" for his release pending sentencing. The Court will then address Defendant's flight risk and danger to the community under § 3143.

Defendant presents the following reasons why he should be released under the applicable standard:

- Defendant qualifies for the safety valve provision under 18 U.S.C. § 3553(f) and, given his lengthy period of incarceration already served, he intends to seek a time-served sentence at his sentencing hearing. (Docket No. 249 at 1-2). Assuming he convinces the Court to give him a time-served sentence, Defendant would face little to no additional exposure to prison. (*Id.* at 5).[3]

- The Probation Office recommends his release on bond pending sentencing. (*Id.* at 2).[4]

- Defendant's friend and chosen family, Jason Bolton, has agreed to permit Defendant to live with him while he awaits sentencing. (*Id.*). In a letter to the Court, Mr. Bolton asserts that he has known Defendant for 15 years and that they are "close companions," although he does not indicate whether he has lived with Defendant in the past. (Docket No. 249-1). Mr. Bolton also explains that, based on his life experience and activities, he is confident he can connect Defendant to mental health treatment and community support in the time before the sentencing. (*Id.* at 1-2).

---

[3] While Defendant focuses on the incarceration-portion of his sentence and argues that he faces little additional punishment exposure, he faces a minimum of four years' supervised release based on his guilty plea pursuant to 21 U.S.C. § 841(b)(1)(B). (Docket No. 225-1). It is the Court's view, that such a lengthy term of supervised release is a significant punishment that increases Defendant's remaining punishment exposure regardless of how much time in prison he ultimately serves.

[4] On April 12, 2022, the Court confirmed with Probation Office that it continues to recommend release on bond. While the Court certainly respects the Probation Office's position, it is the Court's opinion that Defendant is not an appropriate candidate for release on bond.

- In the approximately nineteen-month time period from when the pandemic began in March 2020 until Defendant was moved out of the Allegheny County Jail ("ACJ") in October 2021, Defendant experienced harsh conditions of confinement as part of the ACJ's attempt to mitigate the spread of COVID-19. (Docket No. 249 at 2). As Defendant puts it, "[P]eople were confined to their cells for 23 hours every day. Showers were limited, phone calls were limited, programming was limited, and socialization was limited." (*Id.*).

- Defendant fears contracting COVID-19 because he has asthma. (*Id.*). Indeed, Defendant tested positive for COVID-19 in August 2021 and had difficulty breathing, although he had recovered by the time of his change-of-plea hearing on November 1, 2021. (*Id.* at 2-3).

- Lastly, Defendant argues that his detention for over 4 years means that he is no longer a threat to the community, in particular because he has not been able to consume illegal drugs while incarcerated. (*Id.* at 4-5).

As the Court sees it, Defendant has not "clearly" shown that there are "exceptional reasons" why his detention would not be appropriate pending his sentencing. § 3145(c). In the alternative, Defendant has failed to carry his burden to show by clear and convincing evidence that he is not a flight risk and that he is not a danger to the community. § 3143(a)(1).

**A. Exceptional Reasons**

Defendant has not met his burden to clearly show that exceptional reasons exist to warrant his release pending sentencing. *See Smith*, 34 F. Supp. 3d at 553 ("The burden is on Defendant to show by clear and convincing evidence why her detention would not be appropriate based on exceptional reasons." (citation omitted). To that end, "exceptional requires something 'out of the ordinary' to distinguish the defendant's case from those of [other defendants] subject to mandatory

7

detention." *Id.* (quoting *Salome*, 870 F. Supp. at 653). "Most courts have defined 'exceptional' under § 3145(c) as 'clearly out of the ordinary, uncommon, or rare.'" *Smith*, 34 F. Supp. 3d at 553 (citations omitted).

As an initial matter, the PIR reveals that Defendant has an outstanding arrest warrant in Michigan for a possession of methamphetamine charge for which he pled guilty in 2012. For his part, Defendant, despite several rounds of briefing, has not proffered how he would address this active warrant. (*See* Docket Nos. 249, 255, 264). Defendant's failure to appear for sentencing in Michigan state court shows a lack of respect for the judicial system and demonstrates that he is a flight risk. Overall, the Court finds that the existence of the active warrant in Michigan for failing to appear at a scheduled sentencing hearing demonstrates that Defendant has not shown "exceptional reasons" justifying his release pending his sentencing hearing in this case, especially since he is scheduled for sentencing in a few weeks.[5]

Turning to Defendant's arguments for why he has satisfied the "exceptional reasons" standard, the Court has already considered and rejected Defendant's argument that he should be released because of the dangers caused by the pandemic when denying Defendant's motion to reconsider the Court's first detention order. (Docket No. 164). Moreover, the arguments Defendant makes regarding COVID-19 are the same that the Court has repeatedly rejected when other defendants have sought to demonstrate "extraordinary and compelling" circumstances for release

---

[5] As Defendant acknowledges, the Court's decision in *United States v. Somerville*, Criminal No. 17-222, at Docket No. 293 (W.D. Pa. June 1, 2021) (Fischer, J.), is distinguishable from the present case for several reasons. (Docket No. 255 at 1). For one, Somerville had not been found guilty when he sought release on bond, and so the more lenient standard regarding release applied. *Somerville*, Docket No. 293 at 10 (applying 18 U.S.C. § 3142(j), which requires a defendant to establish a "compelling reason" for his release before trial). Here, Defendant has pled guilty and is awaiting sentencing, meaning 18 U.S.C. §§ 3143 and 3145 apply. Furthermore, Somerville did not have an outstanding arrest warrant when he was released, unlike Defendant here. Lastly, Somerville sought release on bond during a period in which trials were suspended because of the pandemic. *Somerville*, Docket No. 293 at 2. No such restrictions face the parties for Defendant's sentencing hearing.

under 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *United States v. Porter*, 2021 WL 5989142, at *3 (W.D. Pa. Dec. 17, 2021) (Fischer, J.) (finding that defendant's asthma and other health conditions when combined with the harsh conditions of confinement induced by the pandemic did not constitute "extraordinary and compelling" reasons for his release); *United States v. Jones*, No. 18-100, Docket No. 142 at 8-9 (holding that fear of contracting COVID-19 combined with possessing an incentive to obey court-imposed conditions of release because of favorable 11(c)(1)(C) plea agreement did not constitute exceptional reasons for release); *Stevenson*, 2020 WL 3104943, at *4 (collecting cases where courts denied requests for release because of a defendant's asthma condition and fear of contracting COVID-19).

Additionally, Defendant has been vaccinated and already contracted COVID-19, thus reducing the potential harm of another COVID-19 diagnosis. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (explaining that natural immunity removes the "imminent risk of serious physical injury" from again contracting COVID-19 and that the widespread availability of vaccines "'eliminates' need for compassionate release" (citation omitted)); *see also Jackson*, 2022 WL 716968, at *3 (rejecting argument that fear of COVID-19 amounted to an exceptional reason justifying release because the defendant had already contracted and recovered from COVID-19).

The Court further notes that Defendant's complaints about the ACJ have been mitigated because he was transferred from the ACJ to another facility prior to his change of plea hearing in the fall of 2021. *See United States v. Jackson*, 2022 WL 716968, at *3 (W.D. Pa. Mar. 10, 2022) (rejecting motion for release pending sentencing in part because "Defendant's complaints about the ACJ have been mitigated because he was recently transferred from the ACJ to the Butler County Prison"). In any event, the Court believes that the harsh conditions of confinement that Defendant experienced do not amount to an "exceptional" reason for release. *See id.* (explaining that "the Court does not believe that Defendant's complaints about allegedly substandard medical,

9

dental, substance abuse, and mental health treatment he has received during his incarceration [at the ACJ] give rise to exceptional circumstances justifying his release" and observing "[i]ndeed, Courts have generally rejected such claims" and collecting cases holding same).

What is more, a review of Defendant's records do not reveal that he completed any programming while incarcerated, including during his period of incarceration before the onset of the pandemic in March of 2020. (Docket No. 279). While his prison records reveal that Defendant has numerous physical and mental ailments, the records also show that he has received medical care by prison medical staff. (Docket No. 279).

Defendant indicates that he will seek a time served sentence at the sentencing hearing; thus any additional time he spends incarcerated before the sentencing hearing improperly "redefines" what an appropriate sentence would be in his case. (Docket No. 249 at 6). However, the Probation Office designated Defendant as a career offender with an advisory guidelines range of 188 to 235 months, (Docket No. 240 at ¶¶ 26, 73), and the Government indicated it will seek a sentence within the guidelines, (Docket No. 257).[6] Defendant has not yet filed a position with respect to sentencing factors and has sought numerous continuances to do same (i.e., from the initial deadline of January 11, 2022 to April 15, 2022). (Docket Nos. 242, 250, 258, 262, 266, 270, 276). His sentencing has likewise been continued several times as it was initially scheduled for February 4, 2022 and is currently set for May 17, 2022. (Docket Nos. 228, 277). As of the date of the upcoming sentencing hearing, Defendant will have served 53 months and 26 days in custody.

However, even if Defendant did not qualify as a career offender under the guidelines, his range would be 57 to 71 months, based on an offense level of 23 and a criminal history category of

---

[6]  The present case differs from the Court's decision in *Somerville*, where the Government abandoned its position that Somerville was a career offender under the guidelines, and the Court noted that Somerville had "at least a plausible argument" that his approximately 53-month incarceration period met or exceeded his likely guideline range. (Docket No. 13-14).

III. (Docket No. 240 at ¶¶ 25, 27, 28 36); U.S.S.G. Chapter 5, Part A. Given same, at the time of the Defendant's sentencing, he will not yet have served the full length of the non-career offender guideline range, and he faces sentencing exposure under the sentencing guidelines of 188-235 months and up to 40 years' imprisonment under the applicable statutory provisions. *See Jackson*, 2022 WL 716968, at *4 (rejecting argument that defendant had demonstrated extraordinary circumstances for release when the "best-case scenario" for his guidelines range would be 37-46 months, and he had spent 18 months in custody).

### B. Flight Risk

In the alternative, the Court finds that Defendant has not established, by clear and convincing evidence, that he is not a flight risk. Defendant's criminal history reveals that a warrant for his arrest in Michigan remains pending after he failed to appear for his sentencing on a drug possession charge. (Docket No. 240 at ¶ 32). Defendant offers no information to rebut the facts in the PIR or explain why he failed to appear for sentencing in Michigan. His failure to appear for sentencing in the past weighs against his current effort to show that he is not a flight risk now. *Smith*, 34 F. Supp. 3d at 545 n.2 (explaining that courts include prior instances of failure to appear in court when assessing flight risk). Similarly, Defendant's continuation of his criminal behavior while on probation for a similar offense demonstrates a propensity to disregard court orders setting conditions of release. (Docket No. 240 at ¶ 35).

Defendant argues that he is not a flight risk because "he has much more to lose at this juncture" after pleading guilty and remaining incarcerated for several years. (Docket No. 255 at 2). According to Defendant, he would not flee because flight would mean more time in prison in the future. (*Id.*). Defendant's argument is premised on the assumption that he has little to no time left to serve on his eventual sentence. As the Court noted previously, Defendant's argument is too speculative to help him prove that he will not be a flight risk. All that is currently known is that the

11

Probation Office designated Defendant as a career offender with an advisory guidelines range of 188 to 235 months, (Docket No. 240 at ¶¶ 26, 73), and the Government will seek a sentence within the guidelines, (Docket No. 257). *See United States v. Stevenson*, 2020 WL 3104943, at *4 (W.D. Pa. Apr. 22, 2020) (Fischer, J.) (denying motion for release pending sentencing because the defendant had "a significant incentive to flee given the very high advisory guidelines range he potentially faces of 292-365 months' incarceration"); *see also United States v. Jones*, No. 18-100, Docket No. 142 at 3, 7 (W.D. Pa. Apr. 6, 2020) (Fischer, J.) (rejecting argument that defendant's guilty plea would reduce his incentive to flee because the defendant would not want to jeopardize the benefits he gained in the agreement).

Defendant also emphasizes that he will live with his long-time friend, Mr. Bolton, who will help him comply with his conditions of release, including appearance at his sentencing. (Docket No. 255 at 2). Initially, the Court reiterates that "the mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release." *See, e.g.*, *Stevenson*, 2020 WL 3104943, *4 (quoting *United States v. Pride*, 2020 WL 421310, at *4 (W.D. Pa. Jan. 27, 2020) (Fischer, J.)). As the Court sees it, Defendant's proposed release plan would not ensure his appearance at his sentencing hearing.[7]

At bottom, it is the Court's view that Defendant falls short of meeting his burden to prove by clear and convincing evidence that he is not be a flight risk.

### C. Danger to the Community

As a second alternative, the Court finds that despite Defendant's assertion that he is not a danger to the community, (*see* Docket No. 249 at 4-5), he has not met his clear-and-convincing

---

[7] To that end, the Court notes that Mr. Bolton has prior criminal convictions for fleeing or attempting to elude an officer, driving under the influence, and driving with a suspended license, according to the November 20, 2021 bond report. Mr. Bolton's prior convictions raise concerns with the Court about his ability to help Defendant comply with any applicable bond conditions.

evidence burden to prove same. As the Court has held many times, drug trafficking, including trafficking 443 grams of methamphetamines, poses as serious danger to the community.[8] *See, e.g.*, *United States v. Porter*, 442 F. Supp. 3d 903, 907 (W.D. Pa. 2020) (Fischer, J.) (denying release pending sentencing under 18 U.S.C. § 3143 because "the record shows that Defendant committed the cocaine trafficking offense in this case while he was on federal supervision . . . , thereby demonstrating his propensity to engage in illicit conduct which poses a danger to the community even when under court-ordered conditions."); *see also Stevenson*, 2020 WL 3104943, at *4; *United States v. Oliver*, 2016 WL 1746853, at *8 (W.D. Pa. May 3, 2016) (Fischer, J.). "The statutory language as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Harris*, 2020 WL 7249339, at *4 (W.D. Pa. Dec. 8, 2020) (Ranjan, J.) (quoting *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985)).

As noted earlier, the Court previously considered Defendant's detention status after his indictment but before his guilty plea. In a memorandum opinion issued on February 22, 2018, the Court explained in detail why it believed Defendant should remain detained pending his trial. (Docket No. 60). In this opinion, the Court held that "[a]fter careful consideration of all the evidence of record, and the arguments of counsel in light of these governing legal principles, the Court finds that, on balance, the evidence presented at the detention hearing before Magistrate Judge Lenihan overwhelmingly favors the Government . . . and that Defendant filed to rebut the

---

[8] According to the Sentencing Commission, methamphetamine use appears to be relatively rare in Western Pennsylvania, given that most methamphetamine convictions are secured in jurisdictions in the southern and western portions of the country. *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Methamphetamine_FY20.pdf (last visited April 14, 2022). To that end, an increase in methamphetamine dealing in this region through the actions of Defendant would only add to the danger the community already faces because of other substances such as cocaine, heroin, and fentanyl.

presumption against detention." (*Id.* at 10). In the alternative, the Court held that "even if Defendant had rebutted said presumption, this Court finds after considering the record as a whole there is no condition or set of conditions which would reasonably assure that Defendant would not engage in drug trafficking on release." (*Id.*). The Court further held "that the Government established by clear and convincing evidence that Defendant is a danger to the community." (*Id.* at 18).

A few facts have changed since the Court issued its memorandum opinion in February 2018. For one, pretrial services recommended release on bond. *But see United States v. Francis*, 2020 WL 1912214, at *2 (W.D. Pa. Apr. 20, 2020) (Conti, J.) (rejecting motion for release pending trial even though the Probation Office had recommended release). Defendant also points out that he has spent over four years in prison, including a nineteen-month period at the ACJ under pandemic-induced restrictions. (Docket No. 249 at 2). As a consequence, he has been deterred from using and dealing drugs. (*Id.* at 4-5). While Defendant has served a long time in prison already, his prison time does not necessarily mean he will be deterred from returning to his criminal activity. Since 2007, Defendant has pled guilty to three drug crimes. He received punishment on two occasions, but each time he returned to dealing. His prior criminal history, along with the fact that he committed the instant offense while on probation, undercuts Defendant's argument that his time in prison means he will not return to drug dealing.

Moreover, several material circumstances that caused the Court to order Defendant's detention remain the same. For one, Defendant had reported "that from 2006 until his March 2017 arrest, he was using methamphetamines on a daily basis." (Docket No. 60 at 13). The PIR corroborates Defendant's earlier account, noting that Defendant, now 35, began using methamphetamines at age 20 and was a daily user until his arrest on the instant offense in 2017. (Docket No. 240 at ¶ 54). Defendant's only known substance abuse treatment was the completion

of a 30-day inpatient substance abuse treatment program over the summer of 2017, along with some outpatient treatment before his arrest. (*Id.* at ¶ 56). The Court took this treatment into account in its previous memorandum opinion. (Docket No. 60 at 13). When finding that the Government has established, by clear and convincing evidence, that Defendant was a danger to the community because of his drug dealing, the Court observed:

> [A]lthough the Court appreciates that at the time of the detention hearing Defendant was making serious efforts to maintain his sobriety through his participation in both inpatient and outpatient substance abuse treatment, . . . the Court rejects the notion that he is only a danger to the community if he is personally using methamphetamine, as he maintains . . . . Even if Defendant is no longer using methamphetamine, he remains a danger to the community, in this Court's estimation, given that the quantity of controlled substances allegedly attributable to him in this case - 50 grams or more of methamphetamine - far exceeds the amount that could be used for his personal consumption. (Docket No. 60 at 15).

Defendant's employment is also sporadic. From 2008 until 2015, Defendant reported no work history. (Docket No. 240 at ¶¶ 63-64). Beginning in 2015 until his arrest, Defendant sold goods on eBay and Amazon and participated in a home-flipping business with John Fullum and Mr. Bolton. (*Id.*). The PIR shows that Defendant has no assets and no income given his incarceration for the last four years. (*Id.* at ¶¶ 68-70). Like with his substance abuse history, the Court took Defendant's sporadic work history and lack of assets into account in its prior opinion. (Docket No. 60 at 13). Lastly, Defendant's criminal history is more serious than what the Court considered in its prior opinion. At that time, the Court noted that Defendant's "prior criminal history is serious" and recounted his 2007 and 2015 drug dealing convictions. (Docket No. 60 at 13-14). Since then, an additional charge for possession for which Defendant pled guilty in 2012 is included in the mix of an already serious criminal history. (Docket No. 240 at ¶ 32).

In sum, by the nature of his plea, Defendant is guilty of an offense prohibited by the Controlled Substances Act which carries a maximum term of forty years' imprisonment. Defendant has not presented clear and convincing evidence that he is not likely to flee and is not a danger to

the community, and he has failed to clearly show exceptional reasons to qualify him for release under 18 U.S.C. § 3145(c). Accordingly, Defendant must remain detained pending sentencing pursuant to 18 U.S.C. § 3143(a)(2).

### III. CONCLUSION

For the reasons detailed herein, the Court concludes that Defendant has not shown that he meets the requirements for release pending sentencing. Accordingly, Defendant's motion is denied.

An appropriate Order follows.

### ORDER OF COURT

AND NOW, this 14th day of April, 2022, for the reasons set forth in the Memorandum above, IT IS ORDERED that Defendant's Motion for Release Pending Sentencing (Docket No. 249) is DENIED.

*s/ Nora Barry Fischer*  
Nora Barry Fischer  
Senior United States District Judge

cc/ecf: All counsel of record